UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CHAMBERS JUNES<br>1336 F St NE<br>Washington, DC 20002<br><br>Plaintiff,<br><br>    v.<br><br>GOVERNMENT OF THE DISTRICT OF COLUMBIA<br><br>SERVE: Mayor Muriel Bowser<br>Designee:  Darlene Fields<br>441 4th Street NW<br>Suite 600 South<br>Washington, D.C. 20001<br>202-724-6507<br><br><br>SERVE: Karl Racine, Attorney General<br>Designee: Darlene Fields or Tonia Robinson or Gale Rivers<br>Attorney General for the District of Columbia<br>441 4th Street, N.W., 6th Floor South<br>Washington, D.C. 20001<br>202-724-6295<br><br>and<br><br>FREDERICK ONOJA<br>1805 Bladensburg Road, NE<br>Washington, DC 20002<br><br>Defendants. | Civil Action No: 17-85 |

## COMPLAINT

Complaint for Money Damages with Jury Demand

Page 1

1. This is an action for a judgment for money damages for assault and false arrest under the common law of the District of Columbia and unreasonable arrest and excessive force and fabrication of evidence under Section 1983 brought by plaintiff Chambers Junes against defendants the Government of the District of Columbia (hereinafter the "District of Columbia" or the "District") and Frederick Onoja, an officer of the District of Columbia Metropolitan Police Department ("MPD").

## Parties

2. Plaintiff Mr. Junes is an adult and a longtime resident of the District of Columbia area.

3. Defendant government of the District of Columbia is a municipal corporation capable of being sued under D.C. Code § 1-102.

4. Defendant Frederick Onoja is an employee of the District of Columbia and a member of the MPD.

5. At all times defendant Frederick Onoja was acting within the scope of his employment and defendant Frederick Onoja was acting pursuant to a policy of the District of Columbia.

6. For purposes of § 1983 this complaint names defendant Frederick Onoja in his individual capacity.

## Factual Allegations

### Introduction

7. Mr. Junes is a veteran.

8. He served in the Army National Guard.

9. On January 13, 2016 about 8:00 pm Mr. Junes was riding his bicycle through the alley behind Roses Liquor at 830 Bladensburg Road, NE, Washington, DC. when he stopped to fix his gloves and his bike.

10. Officer Onoja of the District of Columbia MPD pulled up by himself in a patrol car and got out.

11. His bicycle had a beverage holder attached to the "down tube" of the frame to hold a Gatorade bottle for beverages such as water or Gatorade or beer. See picture below at ¶ 13.

12. Mr. Junes was not drinking from the bottle when Officer Onoja stopped him.

13. 

14.     Mr. Junes had been harassed by Officer Onoja before and he knew of his reputation for violence in the community so he was scared to be alone with Officer Onoja in a dark alley.

15.     Therefore Mr. Junes wanted to go out of the alley into a lighted area by the Seven 11 on Neal and Bladensburg Road, NE where there were people and talk to Officer Onoja there.

16.     Mr. Junes started trundling his bicycle out of the alley.

17.     Gog started repeating in a loud, stern voice, "Sir, you're not leaving." "Sir, I'm stopping you."

18.     As Mr. Junes got to the street Officer Onoja tugged at his coat while Mr. Junes had both hands on the handlebars of his bike.

19.     Mr. Junes kept walking so Officer Onoja then came up on Mr. Junes' right side as he was pushing the bike and squirted mace in his eyes.

20.     Mr. Junes reflexively raised his right arm to cover his face as Officer Onoja sprayed mace in his eyes but Mr. Junes did not swing at or strike Officer Onoja.

21.     Mr. Junes continued pushing the bike across the street with Officer Onoja following in a slow pursuit squirting mace at him.

22.     Then Officer Onoja pushed Mr. Junes off his bike.

23.     Mr. Junes got up and he kept pushing his bike across the street.

24.     Mr. Junes got on his bike to ride away and Officer Onoja tackled him and knocked him off the bike.

25. Officer Onoja sat on his back while Mr. Junes was lying face down on the street appealing to bystanders for help asking them to film the incident.

26. Officer Onoja called for back-up and several officers arrived.

27. Mr. Junes sat in hand cuffs for about ten minutes with mace in his eyes before the ambulance arrived to treat his eyes.

## Starburst Plaza



Top: Current engineering sketches for the Starburst intersection. Bottom: Plaza concept sketch from the H Street-Benning Road Great Streets project. Click to enlarge.

28.

29. Starburst Plaza is named for the "starburst" pattern created by the union of H Street, Maryland Avenue, and Bladensburg and Benning roads NE, the plaza is administered by the District Department of Transportation and maintained by H Street Main Street, a nonprofit.

30. Because Starburst Plaza is administered by the District Department of Transportation there is no curfew there.

31. It is a transportation hub with lots of bus routes and a metro station.

32. There are facilities designed to invite people to hang out and socialize there including shade trees, a fountain, benches, and tables with chess boards painted on them, and a Capital Bikeshare station.

33. The H Street Farmers Market was introduced in July 2016.

34. Because Starburst Plaza is administered by the District Department of Transportation there is no curfew there.

35. There are benches and tables with chess boards painted on them and other facilities designed to invite people to hang out and socialize there.

36. Whenever Officer Onoja sees Mr. Junes in the park he tells him to keep moving and not to loiter in the park but to keep moving.

**Detective explains the MPD's philosophy of quality of life policing to Mr. Junes.**

37. After arriving at the station Mr. Junes was taken into an interview room where a Detective explained the MPD's philosophy of quality of life policing to Mr. Junes.

38. First, the Detective told Mr. Junes that this interview would be his only opportunity to explain his version of events because his defense lawyer would not let him speak.

39. Then the Detective explained to Mr. Junes that the neighborhood around Starburst Plaza (at the intersection of H street and Bladensburg Road, NE) and the "Bladensburg Road corridor" is changing with homes now worth up to $600,000 .

40. The MPD believe that criminals congregate at Starburst Plaza so the police heavily patrol the area.

41. So the police now take a zero tolerance approach to quality of life crimes because they depress property values.

42. The detective explained that when the police went to Starburst Plaza they did not discriminate between the bad people -- "the rapists, robbers" -- and the good people and the police just make everyone leave because congregating is bad for the community.

43. The detective cautioned Mr. Junes against provoking officers.

44.     The detective asked Mr. Junes, "Let me ask you a bigger question – will you drink in public again." No. so that's good, because that's a lesson.

45.     Mr. Junes repeatedly told the detective that he did not assault Officer Onoja and that he was afraid to stay with Officer Onoja in the alley and just wanted to go out of the dark alley.

46.     The detective told Mr. Junes that the neighborhood used be bad but that now it was improving and one day you will go to the Starburst Plaza and see an Art Festival and people will be drinking coffee.

47.     The detective told Mr. Junes that the neighborhood is changing and people have to act in a more civilized way

48.     The detective told Mr. Junes that the City has big plans for the neighborhood.

### Defendant Onoja is an open and notorious violator of civil rights.

49.     Defendant Onoja is an open and notorious violator of civil rights of the people in the District of Columbia whom he polices.

50.     His signature practice is to initiate an encounter with a citizen over a quality of life offense such as POCA or incommoding (D.C. Code § 22-1307(a)) and then to escalate the encounter into a use of force incident in which Officer Onoja assaults the citizen by making them or striking them culminating in an arrest of the victim for APO ("assaulting a police officer").

51.     For example, in this case Officer Onoja stopped Mr. Junes in a deserted alley because believed that the bottle in the bottle holder on his bicycle had beer in it, and then defendant Frederick Onoja wound up macing Mr. Junes and arresting him for APO.

52. In <u>Hall v. District of Columbia</u>, 16-807 (CKK) Officer Onoja stopped Mr. Hall and some other people in Starburst Plaza and words were exchanged and Officer Onoja wound up jumping on Mr. Hall's back as he walked up the street and macing him in the face and charging him with APO.

53. In <u>Young v. District of Columbia</u>, 16-1046 (TFH) and <u>Fontroy v. District of Columbia</u>, 16-1741 (TFH) two cases growing out of the same incident, Officer Onoja ordered Mr. Young to pour out the contents of a beer can he believed Mr. Young "constructively possessed" and when Mr. Young refused Officer Onoja threw Mr. Young on the ground and later tackled Mr. Fontroy and threw him to the ground.

54. On numerous occasions defendant Onoja has arrested and pressed trumped up charges against young black men and other people without probable cause.

55. On numerous occasions defendant Onoja has harassed and even arrested people, especially young black men, without probable cause for alleged violations of the District's incommoding statute. D.C. Code § 22-1307(a).

56. The incommoding statute purports to criminalize conduct when it results in "crowding, obstructing, or incommoding" the sidewalk or entrances to public or private buildings, and the person refuses to move on when so ordered. D.C. Code § 22-1307(a).

57. Defendant Onoja uses the statute to clear the sidewalks in his patrol area of young black men who have done nothing wrong.

58. For example, Officer Onoja and a partner arrested Mr. Bugg Bey for incommoding even though Officer Onoja admitted in his deposition in the civil trial that he knew Mr. Bugg Bey was standing on private property. <u>Bey v. District of Columbia</u>, 2014 CA 003511 B (District of Columbia Superior Court).

59. In the civil case in Superior Court Judge Dixon denied Officer Onoja's motion for summary judgment on qualified immunity grounds and the District ultimately settled the case.

60. On August 25, 2015, again in front of Stanton, Officer Onoja arrested Joseph Alexander for incommoding for continuing to walk up and down the street after Officer Onoja told him to leave the area.

61. The District has stopped enforcing the incommoding statute because it is unconstitutional.

62. Officer Onoja then began using the "POCA" statute as his favored tool for making false arrests. D.C. Code § 25-1001(a).

63. Officer Onoja makes most of his arrests on the ¼ mile strip of Bladensburg Rd NE, Washington, DC 20002 starting from the intersection of H Street, NE and Bladensburg Rd, NE.

64. This area has been a hot bed of gentrification in the last ten years.

65. It appears that Officer Onoja is motivated at least in part in assisting developers wishing to exclude long-time residents from the area.

66. Officer Onoja has assaulted and trumped up charges against other people in the area and trumped up false charges against other people in the area on quality of life charges such as POCA (D.C. Code § 25-1001(a)) and incommoding (23 D.C. Code § 1307) to clear the area's long-time residents from the area as part of the gentrification process.

### The MPD has not meaningfully disciplined Defendant Onoja.

67. The MPD has not disciplined Defendant Onoja by placing him into non-contact status.

68. Nor has the District meaningfully disciplined Defendant Onoja in any other way.

**The District has ratified Defendant Onoja's conduct in this incident and in the incidents described above by not disciplining him and continuing to allow him to make bad arrests.**

69. The District has ratified Defendant Onoja's conduct in this incident and in the incidents described above by not disciplining him.

70. His superiors signed off on his APO charge against Mr. Junes in thos case even though there was body cam video showing that Mr. Junes did not assault Officer Onoja.

71. He is still in the field making arrests, operating without any decent restraint, totally beyond the pale of any acceptable police behavior.

72. Just a few months ago he made a stop of a Black man on a pretextual stop for POCA (position of an open container of alcohol) and parlayed that pretextual stop into an arrest for possession of a tiny amount of a controlled substance and possession of paraphernalia (a straw).

73. The MPD and the prosecutors have suppressed information about Officer Onoja in cases in which Officer Onoja is a witness in criminal prosecutions in the District of Columbia Superior Court instead of disclosing it to defendants facing charges pursuant to their <u>Brady</u> obligations.

### Claim 1 – Common law assault claim against individual defendant Onoja

74. Mr. Junes adopts by reference the preceding paragraphs as if fully set forth herein.

75. Defendant Onoja maced Mr. Junes and he threw Mr. Junes on the ground and he put his knee into Mr. Junes' back and thereby injured him physically, mentally, and emotionally.

76. The assault of Mr. Junes was against his will and was not lawful or justified.

77. As a direct and proximate result of this assault, Mr. Junes suffered loss of liberty and physical injuries and emotional distress.

### Claim 2 – Common law assault claim against District of Columbia

78. Mr. Junes incorporates herein the preceding paragraphs.

79. The District is liable in **respondeat superior** for the conduct of defendant Onoja in assaulting Mr. Junes against his will and without justification.

80. At all relevant times its agents, its officers named above, were acting within the scope of their employment pursuant to an official policy or practice of the Mayor and the City Council.

81. As a direct and proximate result of this assault, Mr. Junes suffered loss of liberty and physical injuries and emotional distress.

### Count 3 – 42 U.S.C. § 1983; Fourth Amendment claim against defendant Onoja for unreasonable force

82.   Mr. Junes adopts by reference the preceding paragraphs as if fully set forth herein.

83.   Defendant Onoja assaulted Mr. Junes and used force against him when no force was justified in violation of his Constitutional rights under the Fourth Amendment.

84.   The use of force against Mr. Junes was against his will and was not lawful or justified.

85.   Defendant Onoja was not justified in macing Mr. Junes and throwing him to the ground and putting his knee into Mr. Junes' back because he did not resist.

86.   In tackling Mr. Junes and throwing him to the ground and putting his knee into Mr. Junes's back and continuing to beat Mr. Junes, Defendant Onoja acted intentionally or maliciously, unjustifiably, and unreasonably in violation of Mr. Junes' well-established right under the Fourth Amendment to the United States Constitution to be free from excessive force.

87.   Officer Onoja's assault was the moving force behind Mr. Junes' suffering loss of liberty and physical injuries and emotional distress.

### Claim 3 -- Common law malicious prosecution against District of Columbia

88.   Mr. Junes incorporates herein the preceding paragraphs.

89.   The District (1) initiated a criminal prosecution against Mr. Junes, (2) maliciously and (3) without probable cause, (4) which terminated in favor of Mr. Junes when the trial court dismissed the case for want of prosecution, and (5) which caused injury to Mr. Junes.

90. As a direct and proximate result of this prosecution, Mr. Junes suffered loss of liberty and physical injuries and emotional distress.

### Count 5 – 42 U.S.C. § 1983; Fifth Amendment/ Sixth Amendment claim against defendant Onoja for fabrication of evidence

91. Mr. Junes adopts by reference the preceding paragraphs as if fully set forth herein.

92. Officer Onoja falsely swore in a police report and a "Gerstein" (sworn probable cause affidavit) that Mr. Junes "swung his hand toward Officer Onoja' direction in an attempt to strike Officer Onoja."

93. In fact, this statement is fabricated.

94. Officer Onoja supplied the false documents supported by false oral statements to fellow MPD officers and superiors and to the prosecutor.

95. Officer Onoja even fabricated the probable cause facts on the charge of APO.

96. The "AUSA" (Assistant United States Attorney) relied on Officer Onoja's fabrications to initiate a prosecution of Mr. Junes for APO.

97. Officer Onoja's false statements effectively hijacked the AUSA's independent judgment and caused the AUSA to advance a case based on the fabrications.

98. By doing so Officer Onoja violated Mr. Junes' right to a fair trial under the 5th Amendment and 6th Amendment.

99. Officer Onoja's fabrication of evidence resulted in a deprivation of Mr. Junes' liberty because the MPD arrested him and the US Attorney in reliance on Officer Onoja's fabrications prosecuted Mr. Junes for four months.

100. As a direct result, Mr. Junes suffered loss of liberty and physical injuries and emotional distress.

### Count 7 – 42 U.S.C. § 1983; Municipal liability claim against defendant District of Columbia

101. Mr. Junes adopts by reference the preceding paragraphs as if fully set forth herein.

102. The District has a custom or practice of failing to discipline defendant Onoja which can be inferred from evidence of repeated constitutional violations for which defendant Onoja was not discharged or reprimanded

103. Moreover, by keeping defendant Onoja in the field with knowledge of his unconstitutional conduct without disciplining him the District has ratified his conduct.

104. The District's custom and ratification was the moving force behind Mr. Junes' suffering loss of liberty and physical injuries and emotional distress.

### RELIEF DEMANDED

Mr. Junes respectfully requests that this Court grant him the following relief:

A. Enter a judgment in favor of plaintiff.

B. Enter a judgment awarding plaintiffs attorneys' fees and costs incurred in bringing this action under 42 U.S.C. § 1988; and

C. Grant such other relief as this Court deems just and proper.

| Respectfully submitted, | |
|---|---|

| | |
|---|---|
| /s/ William Claiborne<br>WILLIAM CLAIBORNE<br>D.C. Bar # 446579<br><br>Counsel for Mr. Junes<br><br>2020 Pennsylvania Ave, NW<br>#395<br>Washington, DC  20006<br>Phone 202/824-0700<br>Email claibornelaw@gmail.com | |

## JURY DEMAND

Plaintiffs demand a jury of six as to all claims so triable.


/s/William Claiborne_
WILLIAM CLAIBORNE
D.C. Bar # 446579
Counsel for Plaintiff